IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANN C. MALLETT,

                Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

6:11-CV- 06412 RE

**OPINION AND ORDER**

**REDDEN**, Judge:

Plaintiff Ann Mallett ("Mallett") brings this action to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability insurance benefits ("DIB"). For the reasons set forth below, the decision of the Commissioner is affirmed and this matter is dismissed.

///

1 - OPINION AND ORDER

## BACKGROUND

Mallett filed her application for DIB benefits in February 2007. She has some college education, and has worked as a supervisor of newspaper deliveries, childcare attendant, retail sales clerk, hostess, and telemarketer. Mallett alleges disability since January 24, 2006, due to back problems, panic disorder, and depression. Tr. 159. Mallett was 51 years old on September 30, 2006, the date her insured status expired. Tr. 21, 142, 145. Her application was denied initially and upon reconsideration. A hearing was held in May 2010. The Administrative Law Judge ("ALJ") found her not disabled. Mallett's request for review was denied, making the ALJ's decision the final decision of the Commissioner.

## ALJ's DECISION

The ALJ found Mallett had the medically determinable severe impairments of degenerative disc disease of the lumbar and cervical spine; headache of migraine/tension variant; anxiety/post-traumatic stress disorder; depression; and emphysema. Tr. 13-14.

The ALJ found that Mallett's impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. Tr. 14-16.

The ALJ determined that Mallett retained the residual functional capacity ("RFC") to perform a limited range of light work, with no overhead reaching, no climbing of ladders/ropes/scaffolds, and the ability to perform other postural activities occasionally. In addition the ALJ found that Mallett needed to sit and stand at will while working; she could not have concentrated exposure to environmental pollutants, vibration, temperature extremes, or hazards; she could not have public contact, but could have superficial contact with coworkers.

Mallett could perform one to three-step tasks that were equivalent to entry level work involving a specific vocational preparation ("SVP) of 2. Tr. 16.

The ALJ found Mallett did not have past relevant work. Tr. 21.

The ALJ found Mallett was not disabled because she could perform the representative occupations of bench assembler and assembly machine operator. Tr. 21-22.

The medical records accurately set out Mallett's medical history as it relates to her claim for benefits. The court has carefully reviewed the extensive medical record, and the parties are familiar with it. Accordingly, the details of those medical records will be set out below only as they are relevant to the issues before the court.

## DISCUSSION

Mallett contends that the ALJ erred by: (1) finding her less than fully credible; (2) finding that her migraines do not meet or equal in medical severity the Listings; (3) improperly rejecting lay testimony; and (4) improperly determining her RFC.

### I. Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir 1995). However, the ALJ's findings must be supported by specific, cogent reasons. *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir 1998). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear and convincing." *Id.* The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Id.* The evidence upon which the ALJ relies must be substantial. *Reddick,* 157 F.3d at 724. *See also Holohan v. Massinari,* 246 F.3d 1195, 1208 (9th

3 - OPINION AND ORDER

Cir 2001). General findings (e.g., "record in general" indicates improvement) are an insufficient basis to support an adverse credibility determination. *Reddick* at 722. *See also Holohan,* 246 F.3d at 1208. The ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir 2002).

In deciding whether to accept a claimant's subjective symptom testimony, "an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." [Footnote omitted.] *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir 1996).

> Under the *Cotton* test, a claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged...." *Bunnell,* 947 F.2d at 344 (quoting 42 U.S.C. § 423 (d)(5)(A) (1988)); *Cotton,* 799 F.2d at 1407-08. The *Cotton* test imposes only two requirements on the claimant: (1) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could reasonably be expected to* (not that it did in fact) produce some degree of symptom.

*Smolen,* 80 F.3d at 1282.

Mallett testified that, in 2006, she could lift a maximum of ten pounds, she could sit for 20 minutes before she had to get up, she could stand for 30-45 minutes before she had to sit down, she could walk 20 minutes before she had to sit down, and she spent half of each day lying down. Tr. 36.

Mallett testified that, in 2006, she had headaches two or three days a week. Tr. 37. She took Imitrex and it took effect in an hour or two. Tr. 14. Mallett testified that she could not work from January 2006 to the May 2010 hearing because of anxiety. Tr. 39.

The ALJ properly noted that Mallett's treatment records for the relevant time period, i.e. January to September, 2006, do not reflect the extent of limitations that Mallett claimed. The ALJ noted that Mallett reported relief of her headaches with Imitrex. Tr. 14, 219. The ALJ noted that there were minimal objective findings, Mallett was overusing her medications, and expressed dissatisfaction with treatment recommendations after being denied additional pain medications. Tr. 17, 221, 272, 453. The ALJ cited the May 2005 treatment note from Alexander Gloria, M.D., who stated that Mallett's medications were likely causing "yo-yo" effects and that tobacco abuse contributed to her problems. Tr. 454. Dr. Gloria noted that Mallett reported her migraines were "much worse" in the early 1990s. Tr. 345.

In February 2006, Karl Kuzis, M.D., Ph.D., noted "slowly increasing cervical pain with trigger of migraines. Pattern improved by exercise but pt not doing anything regularly." Tr. 445. Dr. Kuzis advised daily exercise, and stated that Mallett declined physical therapy. *Id.*

In May 2006, Mallett reported increasing neck and upper back pain leading to headaches, which Dr. Kuzis noted were "not intrc." Tr. 442. Physical examination showed spasm and decreased range of motion in Mallett's neck, but intact upper extremity strength and motion. Tr. 239. Dr. Kuzis noted that "pt very hesitant to do physical therapy despite recommendations over past 6 months." Tr. 239.

In June 2006 Mallett reported fatigue, anxiety, myalgia, and back pain, but not weekly headache. Tr. 433 Dr. Kuzis noted the prior diagnosis of "Classic Migraine Not Intrc." Tr. 433.

5 - OPINION AND ORDER

In August 2006 Mallett reported fatigue, myalgia, back pain, joint pain and joint swelling, but not weekly headaches. Tr. 420.

In April 2007 Mallett reported increasing neck pain leading to headaches, and she was using Vicodin to "both prevent and to stop migraines." Tr. 418. Dr. Kuzis diagnosed "classic Migraine Not Intrc.," and referred her to a pain management specialist. None of the physicians noted that Mallett reported that she had to lie down for half of each day.

The ALJ found Mallett's allegations as to the intensity, persistence and limiting effects of her symptoms not credible to the extent that they are inconsistent with the RFC. Tr. 17. The contradiction between the claimant's testimony and the medical evidence is a clear and convincing reason to find Mallett less than fully credible. *Johnson v. Shalala,* 60 F.3d 1428, 1433-34 (9th Cir. 1995).

## II. The Listings

The ALJ must determine whether a claimant's impairment meets or equals an impairment listed in "The Listing of Impairments" ("The Listings"). *See* 20 C.F.R. Part 404, Subpt. P, App. 1. The Listings describe specific impairments of each of the major body systems "which are considered severe enough to prevent a person from doing any gainful activity." *See* 20 C.F.R. §§ 404.1525(a), 416.925(a). Most of these impairments are "permanent or expected to result in death." *Id.* "For all others, the evidence must show that the impairment has lasted or is expected to last for a continuous period of at least 12 months." *Id.* If a claimant's impairment meets or equals a listed impairment, he or she will be found disabled at step three without further inquiry.

The Listings describe the "symptoms, signs, and laboratory findings" that make up the characteristics of each listed impairment. *See* 20 C.F.R. §§ 404.1525(c), 416.925(c). To meet a

listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim. *See* 20 C.F.R. §§ 404.1525, 416.925. To equal a listed impairment, a claimant must establish symptoms, signs, and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment "most like" the claimant's impairment. *See* 20 C.F.R. §§ 404.1525(a), 416.926(a).

The ALJ considered Listing 11.03:

> 11.03 *Epilepsy–nonconvulsive epilepsy (petit mal, psychomotor, or focal) documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment.* With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R., Pt. 404, Subpt. P, App. 1, Listing 11.03.

The ALJ noted that the Listing required headaches that do not respond to treatment. Tr. 14. The ALJ stated that Mallett "consistently reported relief with use of Imitrex," so that no further consideration of whether her headaches met or equaled the Listing was required. *Id.*

Physician notes indicate that Mallett's headaches were not intractable during the relevant time period. The ALJ's determination that Mallett's headaches did not meet or equal in intensity a Listed impairment is supported by substantial evidence.

### III. Lay Witness

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. § 404.1513(d); 404.1545(a)(3); 416.945(a)(3); 416.913(d); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities

are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting her testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). However, inconsistency with the medical evidence may constitute a germane reason. *Lewis*, 236 F.3d at 512. The ALJ may also reject lay testimony predicated upon the testimony of a claimant properly found not credible when the lay testimony repeats the limitations expressed in the claimant's testimony. *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009).

Christopher M. Mallett completed a Witness Statement in April 2010. Tr. 498-505. He is Mallett's former husband. He endorsed marked limitations in activities of daily living; social functioning; concentration, persistence and pace; and episodes of decompensation. He described chronic pain and depression with "a major episode...every one to two months." Tr. 501.

The ALJ noted that Mr. Mallett completed a form designed for completion by a treating mental health professional. The ALJ determined that, to the extent Mr. Mallett's observations differed from the claimant's reports to her treating physicians, he would give greater weight to the claimant. Tr. 17. The ALJ found Mr. Mallett's observations to be inconsistent with the medical record, particularly the statement that physical therapy "led to severe pain," when the medical record indicates that Mallett declined physical therapy. The ALJ noted that Mr. Mallett's statement was completed in April 2010 while the relevant time period is January through September 2006.

The ALJ properly gave germane reasons for giving little weight to the lay evidence.

## IV. Residual Functional Capacity

Social Security Ruling ("SSR") 96-8p, entitled "Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims," addresses assessment of a claimant's RFC. SSR 96-8p (available at 1996 WL 374184). The Ruling defines the RFC assessment and instructs the ALJ to make findings in construing a claimant's RFC. The Ruling also instructs the ALJ to consider "all relevant evidence" in making RFC findings, and to address the claimant's exertional and nonexertional capacity. *Id.* at *5-6.

A claimant's RFC is an assessment of what a claimant can do in a work setting despite her mental or physical impairment. Here, the ALJ found Mallett capable of performing a modified range of light work.

Mallett argues that the ALJ failed to include limitations identified by DDS consulting examiners in the RFC findings. However, SSR 96-8p requires the ALJ to "remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment, but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4. Here, at steps two and three, the ALJ found that Mallett had moderate limitations in social functioning, as well as in concentration, persistence, and pace. Tr. 15. Determining Mallett's RFC, the ALJ found that her mental functioning limited her to jobs that do not require public contact, but allowed superficial interaction with a coworker. Tr. 16. Mallett could perform one to three step tasks involving an SVP level of 2. *Id.* The ALJ's RFC finding is consistent with the opinion of the State agency psychologist. Tr. 299.

///

The ALJ's determination of Mallett's RFC is supported by substantial evidence.

## CONCLUSION

For these reasons, the ALJ's decision that Mallett is not disabled is based on correct legal standards and supported by substantial evidence. The decision of the Commissioner is affirmed.

IT IS SO ORDERED.

Dated this 7th day of January, 2013.

JAMES A. REDDEN
United States District Judge